O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARMEN MATEVOSYAN, | Case No. LA CV 14-8397 JCG |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Karmen Matevosyan ("Plaintiff") challenges the Social Security Commissioner's decision denying her application for disability benefits. Four issues are presented for decision here:

1.  Whether the Administrative Law Judge ("ALJ") properly rejected Plaintiff's credibility (*see* Joint Stip. at 12-14, 17-18);

2.  Whether the ALJ properly evaluated Plaintiff's treating physician's opinion (*see id*. at 12, 19-21);

3.  Whether the ALJ properly evaluated lay witness testimony (*see id*. at 12, 21-23); and

1

4. Whether the ALJ properly determined that Plaintiff could perform alternative work (*see id*. at 12, 23-24).

The Court addresses Plaintiff's contentions below, and finds that reversal is not warranted.

A. <u>The ALJ Properly Assessed Plaintiff's Credibility</u>

Plaintiff first contends that the ALJ improperly assessed her credibility. (*See* Joint Stip. at 12-14, 17-18.)

As a rule, an ALJ can reject a claimant's subjective complaints by "expressing clear and convincing reasons for doing so." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines a claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citations omitted).

Here, the ALJ provided at least six valid reasons for rejecting Plaintiff's credibility.

First, Plaintiff's subjective complaints lacked objective medical support. (Administrative Record ("AR") at 20-23); *see Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (lack of objective evidence, when combined with other factors, is a valid reason for rejecting a claimant's testimony). For example: (1) there was no evidence of end organ damage or other significant complications associated with Plaintiff's obesity and hypertension; (2) consultative examiner Dr. Helen Rostamloo's objective findings were unremarkable, leading to her conclusion that Plaintiff could perform medium work; (3) imaging studies showed no significant stenosis; (4) no objective data showed major memory impairment, attention deficits, or social difficulties; (5) few cognitive function test or mental status examination findings existed; and (6) the consultative psychiatric examiner concluded, based on her clinical

findings and review of medical records, that Plaintiff had no significant mental limitations. (AR at 20-23, 59, 74, 79, 236-39, 241-45, 285, 305-06.)

Second, Plaintiff responded favorably to a conservative treatment of medication,[1] with only passing mention of side-effects of dizziness and drowsiness. (*Id*. at 22-23, 44-45, 54, 74, 77, 181, 208, 235, 238-39, 250-58); *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted). Notably, Plaintiff admitted that her family doctor indicated that more aggressive treatment, such as surgery, would not help. (AR at 23, 46-47, 54, 68.)

Third, Plaintiff never sought care from a mental health specialist, despite the availability of mental health services as part of her "general relief" benefits. (*Id*. at 23, 36, 47, 53, 241-42, 244, 268); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (an ALJ may consider a claimant's unexplained or inadequately explained failure to seek treatment in assessing credibility); *Jefferson v. Astrue*, 2013 WL 812092, at *6 (C.D. Cal. Feb. 25, 2013) (ALJ properly discounted claimant's mental health allegations because she failed to seek treatment available as part of her general relief benefits).

Fourth, Plaintiff's daily activities – including being able to tend to her own personal needs, care for her dog, shop, cook, and complete light household chores – are inconsistent with her allegation of complete disability. (AR at 23, 48-49, 74-75, 186, 193-95, 201-03, 242, 244, 268); *see Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (in discounting claimant credibility, ALJ may properly rely on daily activities

---

[1] Contrary to Plaintiff's assertion, her magnetic resonance imaging ("MRI") scans were not an aggressive form of treatment. (*See* Joint Stip. at 9-10); *see also Glass v. Rodriguez*, 417 F. Supp. 2d 943, 948 (ND. Ill. 2006) (noting physician testimony that "an MRI test is a diagnostic tool . . . and not a form of treatment"); *Alcala v. Colvin*, 2013 WL 1620352, at *7 (C.D. Cal. Apr. 15, 2013) (describing MRI as an "objective diagnostic test").

3

inconsistent with claim of disabling pain, including claimant's ability care for personal needs, perform routine household chores, and shop).

Fifth, Plaintiff indicated on her initial disability report that she is unable to speak and understand English, yet she testified in English at the administrative hearing. (AR at 23-25, 35-57, 66, 177); *see Mohammad v. Colvin*, 595 F. App'x 696, 697 (9th Cir. 2014) (ALJ's determination that claimant was not "forthright" about her language abilities supported credibility determination). Significantly, when asked about this discrepancy at the administrative hearing, Plaintiff simply said that she could not recall how her answers were recorded on the disability report. (AR at 37-38.)

Sixth, Plaintiff's statements (in reports and at the administrative hearing) that she stopped working in April 2011 conflicted with both (1) her statement to a consultative examining physician in November 2011 that she was "still working as an employee of the Ralph's Market . . .", and (2) earnings records showing that she continued to work at Ralph's in the third quarter of 2011 and the first quarter of 2012. (*Id*. at 24, 36, 71, 82, 157, 165-66, 172, 175, 179, 188, 235-36); *see Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between claimant's testimony and conduct supports rejection of claimant's credibility); 20 C.F.R. §§ 404.1529(a) & (c)(3); 416.929(a) & (c)(3) (in evaluating symptoms, the Commissioner will consider a claimant's efforts to work and prior work record).

Thus, the ALJ properly discounted Plaintiff's credibility.[2]

B. <u>The ALJ Properly Rejected the Treating Physician's Opinion</u>

Next, Plaintiff contends that the ALJ improperly rejected the opinion of her treating physician, Dr. Armine Nazaryan. (*See* Joint Stip. at 12, 19-21.)

---

[2] Contrary to Plaintiff's repeated assertions, the ALJ did not also discredit her testimony because she could not afford further treatment. (*See* Joint Stip. at 4, 7-10, 14, 17, 20-21.) Rather, the ALJ concluded that her claimed lack of financial ability to obtain further testing and treatment was belied by her ability to obtain money for testing from family in the past, and the availability of health services through her "general relief" benefits. (AR at 16, 23, 46-47, 53, 68, 208.)

4

As a general rule, "[i]f the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983); *Lester*, 81 F.3d at 830.

Here, the ALJ properly rejected Dr. Nazaryan's opinion that Plaintiff was unable to perform sedentary work for four reasons.

First, Dr. Nazaryan's opinion conflicted with the less restrictive assessments by the State agency and consultative examiners. (AR at 21, 59; *compare id*. at 247-49, 298- 300 *with id*. at 70-83, 235-46, 267-76); *see Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) ("[I]t was permissible for the ALJ to give [the treating physician's opinion] minimal evidentiary weight, in light of the objective medical evidence and the opinions and observations of other doctors.").

Second, Dr. Nazaryan's opinion that Plaintiff is completely disabled due to back pain was inconsistent with his repeated recommendation for her to exercise. (AR at 21, 250, 252, 254-55, 296, 299); *see Petrauskas v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 7, 9 (9th Cir. 2010) (opinion that claimant was completely disabled contradicted by doctor's encouragement to exercise).

Third, Dr. Nazaryan's opinion conflicted with treatment records for alleged shoulder pain showing (1) "[n]o focal neurological deficits," (2) "[n]o tenderness, no swelling[, and] no deformity," and (3) no significant findings other than possible decreased range of motion at a follow-up visit. (AR at 21, 256, 285); *see Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting opinion).

Fourth, Dr. Nazaryan's opinion conflicted with conservative treatment that (1) included rest and a sling for Plaintiff's shoulder, and medication for her back;

5

(2) did not include usual back treatment such as physical therapy,³ epidural injections, or a TENS Unit or other pain management device; and (3) did not include referral to a specialist. (AR at 21, 44-46, 54, 68, 181-82, 185, 207-08, 235, 238-39, 250-58, 285, 296); *see Rollins*, 261 F.3d at 856 (ALJ may reject opinion of treating physician who prescribed conservative treatment yet opined that claimant was disabled); *Weatherford v. Colvin*, 2014 WL 5759905, *8 (E.D. Wash. Nov. 5, 2014) (ALJ properly rejected treating physician's opinion based in part on conservative pain management and lack of referrals for further evaluation by specialists).

Thus, the ALJ properly evaluated Dr. Nazaryan's opinion.

C. The ALJ Improperly Assessed Lay Witness Testimony, But the Error Was Harmless

Plaintiff next contends that the ALJ improperly evaluated the testimony of her husband, Sarkis Matevosyan, as detailed in his written third-party function report. (Joint Stip. at 12, 21-23; AR at 193-200.)

As a general matter, the ALJ may discount the testimony of lay witnesses only if he provides specific "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *accord Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

Here, the ALJ appears to have improperly assigned "limited weight" to Mr. Matevosyan's testimony based on the reasoning that (1) his statements could be biased due to his relationship to Plaintiff, and (2) he was not "specially trained to make exacting observations as to medical signs and symptoms." (AR at 24); *see Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) (ALJ improperly

---

³ The ALJ noted Plaintiff's testimony that she completed physical therapy, but there was no evidence of such treatment in the record. (AR at 21, 45.)

rejected lay witness testimony of claimant's mother on basis of presumed bias); *Earhart v. Colvin*, 2015 WL 2368597, at *3 (D. Or. May 18, 2015) (noting Commissioner's concession that husband's relationship to claimant and lack of medical training were not valid reasons for rejecting his testimony).

Nonetheless, any such errors are harmless because the ALJ provided at least two valid reasons for rejecting the testimony. *See Valentine*, 574 F. 3d at 694 (error in rejecting lay testimony harmless because remaining reasons valid).

First, Mr. Matevosyan's statements, similar to Plaintiff's, were not fully consistent with the medical evidence discussed above. (AR at 24); *see Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence is a germane reason for discrediting the testimony of a lay witness); *Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [claimant's] own subjective complaints, and because [layperson's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

Second, Mr. Matevosyan's observations about Plaintiff's ability to perform some tasks – such as light household work and light cooking, and care for a "very old dog" and some of her personal needs – support the ALJ's residual functional capacity finding. (AR at 19, 24, 193-95); *see Pinegar v. Comm'r of Soc. Sec. Admin.*, 499 F. App'x 666, 667 (9th Cir. 2012) (failure to provide reasons for rejecting third party testimony harmless where consistent with ALJ's decision).

Thus, the ALJ's assessment of the lay witness testimony does not warrant reversal.

D.   <u>Any Error in Determining Whether Plaintiff Could Perform Alternative Work Was Harmless</u>

Finally, Plaintiff contends that the ALJ erroneously determined at step five of the evaluation that she could perform alternative work. (Joint Stip. at 12, 23-24.)

1 Specifically, Plaintiff contends that the ALJ's determination that she could not perform
2 her past relevant work as a laundry mat attendant – which included filling baskets and
3 folding laundry – is inconsistent with his determination that she could perform the
4 alternative jobs of basket filler and laundry folder. (*See id*. at 23; AR at 39.)

5       At step five of the sequential evaluation, the ALJ bears the burden of proving
6 that work exists in the national economy that a claimant can perform, despite her
7 identified limitations. *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). A
8 vocational expert ("VE")'s testimony that a claimant has the capacity to perform one
9 job is sufficient, as long as the one occupation still has a significant number of
10 positions that exist in the national economy. *See Tommasetti*, 533 F.3d at 1043-44.

11       Any error in determining Plaintiff could perform the basket filler or laundry
12 folder jobs is harmless because the ALJ also found, based on a VE's testimony, that
13 (1) Plaintiff could perform the conveyor belt bakery worker job, and (2) such a job
14 exists in significant numbers. (AR at 26, 62); *see Allison v. Astrue*, 425 F. App'x 636,
15 640 (9th Cir. 2011) (any error in finding claimant could perform a job harmless if
16 remaining jobs identified exist in significant numbers). Plaintiff has made no
17 challenge to the ALJ's determination that she could perform the conveyor belt bakery
18 worker job. (*See* Joint Stip. at 12, 23-24; AR at 231-33); *see also, e.g., Meanel v.*
19 *Apfel*, 172 F.3d 1111, 1114-15 (9th Cir. 1999) (the Court need not address a claimant's
20 arguments regarding both jobs identified by the ALJ where the ALJ properly relied on
21 one of the jobs).

22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /

8

Based on the foregoing, **IT IS ORDERED THAT** judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

DATED: July 7, 2015

_____
Hon. Jay C. Gandhi
United States Magistrate Judge

\*\*\*

**This Memorandum Opinion and Order is not intended for publication. Nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

\*\*\*